THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MINDY LAUER,<br><br>              Plaintiff,<br><br>       v.<br><br>LONGEVITY MEDICAL CLINIC PLLC,<br><br>*et al.*,<br><br>              Defendants. | CASE NO. C13-0860-JCC<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL |

This matter comes before the Court on Plaintiff's Motion to Compel (Dkt. No. 24). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the Motion for the reasons explained herein.

**I.      BACKGROUND**

Plaintiff Mindy Lauer alleges that her former employer, Defendant Longevity Medical Clinic, PLLC, its corporate affiliates, and Longevity's corporate officers retaliated against her for her support of another former employee in his employment discrimination suit. (Complaint, Dkt. No. 1 at 1.) Plaintiff, a former Medical Services Supervisor of Medical Assistants at Longevity's Kirkland clinic, further alleges that such retaliation, culminating in her termination, violated 42 U.S.C. § 1981, as well as the complementary provisions of the Washington Law Against

Discrimination, RCW 49.60. (*Id.* at 4.) The present action is for equitable relief and monetary damages. (*Id.* at 10-11.)

According to Plaintiff's version of the events preceding her termination, Plaintiff's coworker, Dr. Lyndon Capon, made racist comments about Plaintiff's Iranian-born supervisor, Dr. Kambiz Yaraei. (Plaintiff's Motion to Compel, Dkt. No. 24 at 2.) Shortly after, Defendants fired Dr. Yaraei, replacing him with Dr. Capon. (*Id.*) Dr. Yaraei sued Defendants for racial discrimination, and Plaintiff provided Dr. Yaraei with a written statement of the racist comments she had heard Dr. Capon make. (*Id.*) After Plaintiff provided the statement, the case soon settled. (*Id.*) After the settlement, Seth Talbott (Longevity's CEO) and Michelle Olson (Ms. Lauer's supervisor) allegedly "berated" her for costing the company money. (*Id.*) Plaintiff alleges that Defendants continued to retaliate against her, with escalating intensity. For instance, Plaintiff alleges that Defendants "wrote her up" for rules infractions of which she claims innocence, while those truly guilty went unpunished. She also alleges that Defendants ultimately terminated her employment after she took a medical leave "to treat disabilities created by the stress of Defendants' retaliation." (*Id.*) Plaintiff alleges that other employees were also discriminated or retaliated against for opposing Defendants' alleged racism or for refusing to assist Defendants in their efforts to oust Plaintiff. (*Id.* at 3.)

A jury trial has been set in this case for December of 2015. Now in the discovery phase, Plaintiff moves to compel the production of personnel files of several coworkers, which she claims will contain evidence of Defendants' pattern of discrimination and retaliation. (*Id.*) The subjects of Ms. Lauer's request are (1) alleged discriminators and the management who approved their actions, (2) others discriminated against based on race, disability, or opposition to discrimination (the "Protected Groups"), and (3) coworkers outside the Protected Groups who

were treated better than Ms. Lauer.  (*Id.* at 1.)  From the records of these persons, Plaintiff has requested that Defendants produce:

> Records related to qualifications, including applications, resumes, cover letters, job history, licenses/degrees, etc.; Records related to job performance, including positive and negative reviews, customer and/or patient comments and complaints, commendations, etc.; Records related to job history, including pay, bonuses, benefits, raises, promotions, demotions, job descriptions, resignation/termination records, applications for promotions/transfers and the result of such applications, etc.; Records related to discipline, complaints made by or against the employees for any reason including discrimination, investigations into complaints, etc.; Medical records, requested leaves of absence, the grant/denial of any such requests, etc. (relevant given Ms. Lauer's disability discrimination claims); [and] Records reflecting employees' race, national origin, and disability-related status.

(*Id.* at 3-4.)  In all, this request would entail the production of twenty-one personnel files in Defendants' possession, including nineteen files of people not parties to this suit.[1]

Defendants have produced the personnel files of the named Defendants (Talbott and Olson), the personnel files of employees who Plaintiff claims have engaged in protected activity related to race or have opposed retaliation against her (Kambiz Yaraei, Lobat Kimiai, Chris Cano, Jason Foltz), and the personnel file of the one employee who Longevity considers a true "comparator" of Plaintiff (Bia Remen).  (Defendants' Opposition to Plaintiff's Motion to Compel, Dkt. No. 28 at 1-2.)  Defendants refuse to provide any other personnel files requested by Plaintiff because they claim that as the remaining employees are neither true comparators nor were alleged discriminators, such a production request is over broad, as well as intrusive, given the confidential

---

[1] The list of personnel files requested by Plaintiff include those of: "Tish McAlpin – former employee, Clinic Supervisor; Seth Talbott – CEO; Kambiz Yaraei – former employee, Technician; Lobat Kimiai – former employee, Operations Lead; Michelle Olson – Director of Operations; Bia Remen – Concierge Specialist; Terry Craig – former employee, Medical Assistant, Kirkland clinic; Chris Cano – former employee, Medical Assistant, Kirkland and Lynnwood clinics; Flo Siguenza – Operations Specialist; Jennifer Adams – former employee, Phlebotomist, Medical Assistant, Kirkland clinic; Maria Fox – former employee, Medical Assistant, Tacoma and Kirkland clinics; Lyndon Capon – former employee, Physician, Lynnwood and Kirkland clinics; Jennifer Tager – former employee, Medical Assistant, Kirkland clinic; Chari Sewell – Accounts Payable/Payroll Lead; Crystal Priddy – former employee, Medical Assistant, Kirkland and Lynnwood clinics; Jerry Mixon – Founder and Owner and Chief Medical Officer; Jason Foltz – former employee, Medical Assistant, Tacoma clinic; Sarah Bissinger – former employee, Front Desk, Kirkland clinic; Robert Wagner – CFO; Michele Prevette – former Phlebotomist/Front Desk Coordinator, Tacoma clinic; and Josh Glandon – former employee, Medical Assistant, Tacoma clinic." (Defendants' Opposition to Plaintiff's Motion to Compel, Dkt. No. 28 at 3.)

ORDER GRANTING PLAINTIFF'S MOTION TO
COMPEL
PAGE - 3

personal information the records contain. (Defendants' Opposition to Plaintiff's Motion to Compel, Dkt. No. 28 at 4.) Defendants request that if Plaintiff's Motion to Compel is not denied outright, that they be permitted to provide the documents to the Court first for *in camera* review, to determine relevance. (Defendants' Opposition to Plaintiff's Motion to Compel, Dkt. No. 28 at 12.)

The parties have already submitted, and the Court has approved, a stipulated Protective Order (Dkt. No. 22), which declares that "records reflecting medical conditions or treatments of any current or former employees of defendant, including plaintiff; the personnel records of Plaintiff and of persons not party to this lawsuit; financial and proprietary documents of defendant, and financial and proprietary documents of plaintiff not in the public domain or subject to public disclosure; and investigation files into situations involving employees or former employees of defendant" are confidential and shall not be released to the public. (*Id.* at 2.)

## II. DISCUSSION

### A. Legal Standard and Defendants' Burden

According to Federal Rule of Civil Procedure 26,

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). This Rule favors broad discovery.[2] Litigants "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005). "Relevant

---

[2] However, "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2).

ORDER GRANTING PLAINTIFF'S MOTION TO
COMPEL
PAGE - 4

information for purposes of discovery is information reasonably calculated to lead to the discovery of admissible evidence." *Id*. "A request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of this action. Discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the subject matter of this action." *Ragge v. MCA/Universal Studios, Inc.*, 165 F.R.D. 601, 604 (C.D. Cal. 1995). District courts have broad discretion in determining relevancy for discovery purposes. *Hallet v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).

If a requested disclosure is not made, the requesting party may move for an order compelling such disclosure. Fed. R. Civ. P. 37(a)(1). "The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc.*, 175 F.R.D. 646, 650 (C.D. Cal. 1997). This burden is a heavy one in employment discrimination lawsuits, where discovery rules are construed liberally so as to provide the plaintiff with "broad access to the employers' records." *Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642, 643 (1989).

B.  **Defendants' Failure to Meet this Burden/ Relevancy Objection**

Defendants do not claim that any of the personnel files are privileged. (Defendants' Opposition to Plaintiff's Motion to Compel, Dkt. No. 28.) The main argument they proffer against the discoverability of these documents is that Plaintiff's request for the files of non-party personnel is "overly broad and not reasonably calculated to lead to the discovery of admissible evidence," in other words, that they are not relevant. However, this argument completely ignores both the liberal construction of "relevancy" with regard to discovery, generally, as well as the federal precedent

ORDER GRANTING PLAINTIFF'S MOTION TO
COMPEL
PAGE - 5

specifically recognizing the heightened relevancy of personnel files, even of non-parties, in employment discrimination suits.

First, generally, "relevancy" for the purpose of discovery has been interpreted broadly in the Ninth Circuit. As the Court of Appeals held in *Surfvivor Media,* "[r]elevant information for purposes of discovery is information reasonably calculated to lead to the discovery of admissible evidence." 406 F.3d at 635. Under this general rule, it appears clear to this Court that the information contained in the personnel files could be "reasonably calculated" to contain admissible and highly relevant evidence such as complaints by other employees of discrimination, or evidence of disparate treatment in terms of pay, promotion, or discipline between employees of different groups.

Second, and more specifically, there is a strong tradition among federal district courts recognizing the relevancy and thus discoverability of personnel files in employment discrimination suits. In these suits, the inner mental motivations behind allegedly discriminatory acts are near impossible to prove. Therefore, courts have recognized several categories of indirect evidence of discriminatory intent as highly relevant and admissible, barring any privilege. These categories of indirect evidence include "pattern and practice" evidence, "comparator" evidence, and "pretext" evidence. And, the personnel files of the employees of an alleged discriminator are a principal repository of evidence from all these categories, even when such personnel are non-parties.

1)  In employment discrimination suits, in which the inner mental motivations behind allegedly discriminatory acts are near impossible to prove, "*pattern and practice*" evidence is both discoverable and admissible to prove discriminatory intent. *See U. S. Postal Serv. Bd. of Govs. v. Aikens*, 460 U.S. 711, 715-17 (1983); *Heyne v. Caruso*, 69 F.3d 1475, 1479-81 (9th Cir.

ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL
PAGE - 6

1995); *Hawkins v. Hennepin Technical Ctr.*, 900 F.2d 153, 155 (8th Cir. 1990).  To the extent that "pattern and practice" evidence can be gleaned from a company's personnel files, the Western District of Washington has held that the entire personnel files of non-parties may be discoverable, even when some of the information contained in them may be inadmissible.  (*See* Order Granting Motion to Compel by Judge Robert Lasnik, Dkt. No. 25, Ex. D at 2-3; *see also Ladson v. Ulltra East Parking Corp.,* 164 F.R.D. 376, 377-78 (S.D.N.Y 1996).)  The Court finds that Plaintiff's request for the non-party personnel files of current and past employees fits squarely into the pattern and practice evidentiary category that has been deemed relevant by the Ninth Circuit.

Further, Defendants are not, as they suggest, *see* Defendants' Opposition to Plaintiff's Motion to Compel, Dkt. No. 28 at 6, entitled to pick and choose what parts of the personnel files they think are relevant to Plaintiff, to limit discovery to only those portions of the files that contain complaints or discipline related to discrimination, or to select the parts of the files that they think are "reasonably likely" to yield admissible evidence.  This would unfairly deny Plaintiff the ability to prove discrimination through evidence such as disparate pay and promotion practices, disparate treatment with regard to medical leave, and pretextual discipline regarding matters facially unrelated to discrimination.  As the Southern District of New York held in *Ladson*, "the court is not prepared to allow defendants to determine what information is necessary for the plaintiffs to receive."  164 F.R.D. at 377.  Thus, these files are discoverable to the extent requested by Plaintiff.[3]

---

[3] In her Reply, Plaintiff clarifies that her discovery requests pertains not to the entirety of the personnel files, but only to "records related to qualifications and job performance, which may show that people outside the Protected Groups receive better pay/jobs/etc. than people within the Protected Groups who have the same or better qualifications and job performance, records related to pay/benefits/promotions and discipline, which are part of

2) Further, "*comparator*" evidence is likewise relevant and thus discoverable in employment discrimination suits, even when derived from the personnel files of non-party employees. In recognition of the insidiousness of discrimination, the Western District of Washington has held that evidence that a plaintiff "was treated differently than comparable employees because he complained" is relevant and discoverable. (Order Granting Motion to Compel by Judge Robert Lasnik, Dkt. No. 25, Ex. D at 3.) This rule is supported by Supreme Court and Ninth Circuit precedent affirming the relevance of evidence demonstrating that employees outside a protected group have been treated better than those within. *See, e.g., McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973); *Chuang v. University of Cal. Davis,* 225 F.3d 1115, 1126 (9th Cir. 2000). And specifically, evidence from non-party personnel files, such as the position, disciplinary records, wages, and promotion history of employees both inside and outside the protected class, has been held to constitute discoverable comparator evidence. *See e.g., EEOC v. Beauty Enterprises, Inc.,* 2008 WL 3359252 at 4 (D. Conn. 2008).

The withheld personnel files or portions of files requested by Plaintiff represent employees inside or outside the protected group. (Plaintiff's Motion to Compel, Dkt. No. 24 at 8 n.2.) Defendants' response is that none of these non-parties can be considered true comparators because they occupied different positions within Longevity than Plaintiff, whose Medical Supervisor Position seems only to have had a corollary in the position held by Ms. Bia Remen. (Defendants' Opposition to Plaintiff's Motion to Compel, Dkt. No. 28 at 6.) However, Plaintiff

---

showing people outside the Protected Groups receive better treatment than those within the Protected Groups, records related to investigations and complaints, which may reveal discrimination, and records reflecting medical/disability status, race, etc., which will identify membership in the Protected Groups." (Plaintiff's Reply in Support of Plaintiff's Motion to Compel, Dkt. No. 33 at 4.)

ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL
PAGE - 8

correctly states that the Ninth Circuit does not use rigid standards for proving that one is "similarly situated" to Plaintiff so as to qualify as a comparator. (Plaintiff's Reply in Support of Plaintiff's Motion to Compel, Dkt. No. 34 at 2.) Rather, employees need only exhibit similarities in "all material respects," which "depend[s] on context and the facts of the case." *Hawn v. Exec. Jet Mgmt., Inc.,* 615 F.3d 1151, 1157-58 (9th Cir. 2010). Thus, to be similarly situated merely requires that two employees' situations are "sufficiently similar" to "support at least a minimal inference that the difference to treatment may be attributable to discrimination." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2nd Cir. 2001) (cited for this proposition in *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 660 (9th Cir. 2002)). Coworkers need not have the same supervisor or job title as long as they are subject to the same behavioral standards and subject to disciplinary decisions made by the same decision-maker. *Hawn*, 615 F.3d at 1157-59.

The non-party personnel files requested by Plaintiff qualify under this lenient standard. Plaintiff avers that "[e]mployees outside the Protected Groups (Middle Eastern race/origin, disabled, opposed discrimination) include[] Terry Craig, Flo Siguenza, Jennifer Adams, Maria Fox, Jennifer Tager, Bia Remen, Chari Sewell, Crystal Priddy, Josh Glandon, and Michelle Prevette, all of whom were under the chain of command of Defendants Talbott and Olson (just like Ms. Lauer)." (Plaintiff's Motion to Compel, Dkt. No. 24 at 8 n.2; Lauer Declaration, Dkt. No. 26 at 4.) Again, the Ninth Circuit permits courts discretion in determining the degree of similarity required for "comparator" status. Here, where Defendant is a relatively small company in which there are few duplicative positions, and the employees affected by Plaintiff's discovery request were all under the relatively close control of the alleged discriminators Talbott and Olson, it makes sense to define the "comparator" class such that it does not consist merely of one other person (Bia Remen). Thus, the requested personnel files are relevant and discoverable

under this "comparator" category of discrimination evidence as well.

        3)     Evidence of "*pretext*" is also relevant and therefore discoverable. Proof of pretext for a disciplinary or termination decision is often sufficient to prove discrimination. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 512 (1993). Here, Ms. Lauer intends to prove that the reasons Defendants offer for her discipline and subsequent termination were pretextual. She intends to accomplish this with more comparator evidence, principally with regard to Bia Remen, whom Plaintiff maintains was the one actually responsible for rule violations such as discussing the romantic relationships among coworkers. (*See* Plaintiff's Motion to Compel, Dkt. No. 24 at 9.) Given the analysis of comparator evidence in Section II(B)(2), *supra,* it suffices to say that a showing that Ms. Lauer was unjustly punished when the guilty party was not could be relevant and admissible evidence of discrimination, making the personnel files in which such evidence may be found discoverable.

        4)     Finally, Plaintiff alleges that her discovery requests are justified by the fact that the information found in the personnel files, especially with regard to pay and promotion, could yield relevant evidence of the bias of any employee-witness. (*See* Plaintiff's Motion to Compel, Dkt. No. 24 at 10.) Evidence of bias is certainly admissible, *see U.S. v. Abel,* 469 U.S. 45, 51 (1984). This Court agrees with Plaintiff that the requested records are reasonably likely to contain information that could form admissible bias evidence. According to Plaintiff, the named Defendants have on many occasions encouraged employees to trump-up complaints about each other to assist Defendants' efforts to target a member of a protected class. If this were true, it is not unreasonable to assume that these actions would have been rewarded, creating a situation ripe for bias. Thus, this point provides additional support for Plaintiff's discovery requests.

        **C.**     **Privacy Objection/ *In Camera* Review Request**

Defendants' secondary objection to Plaintiff's Motion to Compel is that the personnel files requested contain sensitive personal information such as resumes, records of job performance, pay, disciplinary records, and records of medical leaves of absence, all counseling for the Motion's denial on privacy grounds. The Court disagrees for three reasons.

First, Defendants assert no privilege that would conclusively prevent discovery of this information.

Second, courts in the Ninth Circuit frequently compel the personnel files of employees in employment discrimination suits, despite privacy concerns, when such is warranted given the balance of the relevance/importance of the evidence against the privacy concerns. *See Kerr v. U.S. District Court for the Northern District of Cal.,* 511 F. 2d 192, 197-98 (9th Cir. 1975). It is true that courts are required to "limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case . . . the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26. However, federal courts have considerable discretion in conducting this balancing test, and in the instant case, this Court does not find that the consequences of discovery for either the Defendants or the non-party employees outweigh the considerable importance of such discovery to Plaintiff, who has made a strong showing of the relevancy and expected admissibility of the evidence contained in the personnel files.

Third, while the Court is cognizant of the sensitive contents of these files, the Court is confident that the parties' Protective Order, (Dkt. No. 22), will be sufficient to shield these employees from any public disclosure. This Protective Order, submitted and approved by Defendants, classifies as "confidential material" the "records reflecting medical conditions or

treatments of any current or former employees of defendant, including plaintiff [and] the personnel records of Plaintiff and of persons not party to this lawsuit," among other items. (Protective Order, Dkt. No. 22 at 2.) Parties receiving confidential material may only use such information "for prosecuting, defending, or attempting to settle this litigation." (*Id.*) Such material may not be disclosed to anyone outside of a small collection of entities involved in the litigation. (*Id.* at 2-3.) When and if filed with the Court, documents containing confidential information will either have all personal information redacted, or, if the pertinent party so demands, be filed under seal. (*Id.* at 4.)

Defendants also ask that, if the Court does not deny Plaintiff's Motion to Compel, the Court at least conduct an *in camera* review of the requested files, to determine relevance and thus discoverability. However, given the strong case that Plaintiff has made for the relevance of these materials, as well as the lenient standard for discovery, the Court finds such *in camera review* unnecessary.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel Responses to Discovery (Dkt. No. 24) is GRANTED. Within ten days of entry of this Order, Defendant Longevity Medical Clinic, PLLC, shall fully respond to Plaintiff's Requests for Production G-Y propounded in Plaintiff's First Set of Interrogatories and Requests for Production.

DATED this 29th day of October 2014.

John C. Coughenour
UNITED STATES DISTRICT JUDGE