THE HONORABLE JOHN C. COUGHENOUR

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

MINDY LAUER,

CASE NO. C13-0860 JCC

10

                    Plaintiff,

ORDER GRANTING MOTIONS TO
ENFORCE FEE AGREEMENT AND
SEAL

11

    v.

12

LONGEVITY MEDICAL CLINIC PLLC,

13

et al.,

14

                  Defendants.

15

16       This matter comes before the Court on the Blankenship Law Firm's motions to enforce

17 the BLF fee agreement (Dkt. No. 71) and seal certain exhibits (Dkt. No. 73). Having thoroughly

18 considered the parties' briefing and the relevant record, the Court finds oral argument

19 unnecessary and hereby GRANTS the motions for the reasons explained herein.

20 **I.    BACKGROUND**

21       In late May 2012, Mindy Lauer retained the Blankenship Law Firm (BLF) to represent

22 her in an employment dispute. (Dkt. No. 98 at 2–3.) Lauer was only seeking $5,514 in back pay,

23 (Dkt. No. 72 at 8), although she also sought emotional distress and punitive damages. (Dkt. No. 1

24 at 12.) Lauer personally met with Scott Blankenship, who informed her that he would represent

25 her on a contingent fee basis. (*Id.*) Lauer signed an Agreement for Legal Services which, in

26 Paragraph 1, explained BLF's policy regarding attorney fees as follows:

ORDER GRANTING MOTIONS TO ENFORCE
FEE AGREEMENT AND SEAL
PAGE - 1

> In the event of a recovery from a settlement or a judgment, Attorneys shall
> receive either 1) forty percent (40%) of all sums recovered or saved by settlement
> or judgment including a supplemental judgment with attorneys fees plus interest
> or 2) all hourly fees incurred up to the amount of all sums recovered and saved,
> *whichever amount is greater.*

(Dkt. No. 72-1 at 5, 9 (emphasis added).) Paragraph 1 of the Agreement also listed BLF's current

hourly rates. (*Id.*) In Paragraph 3, the Agreement explained BLF's policy regarding costs as

follows:

> Client understands that there will be costs in addition to Attorney's fees and
> Client shall pay all such litigation expenses. Litigation expenses may include, but
> are not limited to, filing fees, service fees, witness fees, expert investigation,
> mediator's fees, medical records, photocopies, long distance charges, court
> reporter and videographer fees for depositions, and any other out-of-pocket costs
> related to litigating your case. All such costs are the responsibility of our clients
> and are to be paid on a regular basis. Statements will be mailed to Client
> indicating costs incurred within a reasonable period upon the client's request.

(Dkt. No. 72-1 at 6.) Lauer was sent regular invoices notifying her of the costs BLF accrued over

the course of the litigation. (Dkt. No. 98-1 at 14.)

Litigation continued for three years. After the parties' first mediation on August 14, 2014,

Defendant Longevity made a settlement offer for $10,000, which Lauer rejected. (Dkt. No. 98 at

5; Dkt. No. 72 at 12.) In March 2015, Longevity made an offer of judgment for $150,000

including attorney fees and costs. (*Id.* at 6.) Blankenship advised Lauer to reject this offer, as the

firm's fees were already greater than this amount. (*Id.*; Dkt. No. 72-2 at 180.) In response, Lauer

informed BLF that "My thoughts would be $50-100,000 + attorney fees for a settlement." (Dkt.

No. 172-2 at 179.) BLF then declined Longevity's offer on Lauer's behalf. (*Id.* at 179.)

A second mediation was scheduled for April 1, 2015. (Dkt. No. 72-2 at 186.) Before the

mediation, Blankenship emailed Lauer, confirming that she "gave [BLF] authority to settle

within $50,000 to $100,000 for you." (*Id.* at 184.) He also reminded her that she had over

$16,000 in outstanding costs. (*Id.*) Lauer did not object to either of these points. (*Id.*) Lauer was

also provided with a copy of BLF's fees to date, which totaled ▇▇▇▇▇. (Dkt. No. 98 at 6.) The

mediator made a blind offer of settlement for ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.



1   (Dkt. No. 75 at 4.) By April 9th, both parties had accepted the offer. (*Id.*)

6       Lauer initially appeared pleased that Longevity had agreed to the settlement. (Dkt. No.

7   72-2 at 193) ("Thank you Scott for texting me! I'll go home & read my email. Sorry you have all

8   of this on your vacation."). However, she was reluctant to sign the ▓▓▓▓▓▓▓▓ until

9   BLF negotiated its fees. (Dkt. No. 98 at 8; Dkt. No. 72-2 at 213–214.) After a number of

10  contentious emails, Lauer signed ▓▓▓▓▓ on June 16th. (Dkt. No. 90 at 6.) But she was

11  explicit that she was not authorizing BLF's requested attorney fees, (Dkt. No. 72-2 at 213), and

12  continued to insist that BLF reduce its bill. (Dkt. No. 72-2 at 224–236.) BLF appears to have

13  repeatedly called Lauer in an attempt to resolve the dispute, but she did not return its calls and

14  only responded via email. (Dkt. No. 72-2 at 229) ("I would rather have had the ability to speak

15  with you, but you have not called my office despite our requests to speak with you, and despite

16  my office trying to call you several times."). Her sole offer was that she and BLF split the

17  settlement "50/50." (*Id.* at 226.)

18      BLF now moves the Court to grant its fee of ▓▓▓▓▓ and costs of ▓▓▓▓▓, for a

19  total of ▓▓▓▓▓. (Dkt. No. 89 at 43–44.) Because the total settlement amount was ▓▓▓▓▓,

20  this would appear to leave Lauer with ▓▓▓▓▓ (including undisputed funds already

21  distributed to her). (Dkt. No. 88 at 2; Dkt. No. 89 at 1) (addressing the distribution of undisputed

22  funds). Lauer argues that BLF's fees are unreasonable and the Fee Agreement violates the

23  Washington Rules of Professional Conduct (RPC).

24  **II.**   **DISCUSSION**

25      **A.**   **BLF's Fees and Costs Are Reasonable**

26      In attorney fee disputes involving state law claims, district courts must apply state law so

1   long as it "does not run counter to a valid federal statute or rule of court." *MRO Commc'ns, Inc.*

2   *v. Am. Tel. & Tel. Co.*, 197 F.3d 1276, 1281 (9th Cir. 1999) (internal quotation marks omitted).

3   Because there is no indication of such a conflict here, the Court will apply Washington state law

4   to this dispute. *See* LCR 83.3(a)(2) (providing for the application of the Washington Rules of

5   Professional Conduct). Fee agreements that violate the RPC are against public policy and will

6   not be enforced. *Belli v. Shaw*, 98 Wash. 2d 569, 578 (1983). RPC 1.5 provides that "[a] lawyer

7   shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable

8   amount of expenses." The reasonableness standard applies to contingent fees as well. RPC 1.5,

9   Comment 3.

10       Under Washington law, courts apply the lodestar method to determine reasonable fees

11   and costs. *Mahler v. Szucs*, 135 Wash. 2d 398, 433 (1998) *overruled on other grounds by Safeco*

12   *Insurance Co. v. Woodley,* 150 Wash.2d 765 (2004). The lodestar method requires the party

13   seeking fees to bear the burden of proving that its hourly rates and hours expended were

14   reasonable. *Id.* at 434. Once these amounts are multiplied, the total may be adjusted in a court's

15   discretion. *Id.* "This methodology can be supplemented by an analysis of the factors set forth in

16   RPC 1.5(a) which guide members of the Bar as to the reasonableness of a fee." *Id.* at 433 n.20. [1]

17

18   _____

19   [1] These factors are:

20           (1) the time and labor required, the novelty and difficulty of the questions
         involved, and the skill requisite to perform the legal service properly; (2) the
         likelihood, if apparent to the client, that the acceptance of the particular
21       employment will preclude other employment by the lawyer; (3) the fee
         customarily charged in the locality for similar legal services; (4) the amount
22       involved and the results obtained; (5) the time limitations imposed by the client
         or by the circumstances; (6) the nature and length of the professional relationship
23       with the client; (7) the experience, reputation, and ability of the lawyer or lawyers
         performing the services; (8) whether the fee is fixed or contingent; and (9) the
24       terms of the fee agreement between the lawyer and the client, including whether
         the fee agreement or confirming writing demonstrates that the client had received
25       a reasonable and fair disclosure of material elements of the fee agreement and of
         the lawyer's billing practices.
26

PAGE - 4

1     The hourly rates for BLF's attorneys and staff range from $150 to $500. (Dkt. No. 76 at

2  41.) Lauer does not meaningfully contest any of these rates. "[W]hen determining a reasonable

3  hourly rate, the relevant community is the forum in which the district court sits." *Camacho v.*

4  *Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) "Where the attorneys in question have

5  an established rate for billing clients, that rate will likely be a reasonable rate." *Bowers v.*

6  *Transamerica Title Ins. Co.*, 100 Wash. 2d 581, 597 (1983). A district court may also rely "on its

7  own knowledge and experience" in determining the reasonableness of an hourly rate. *Ingram v.*

8  *Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011). Blankenship attests that BLF charged Lauer its

9  established rates. (Dkt. No. 72 at 20.) Several local employment lawyers testify that

10  Blankenship's $500 hourly rate is reasonable for Seattle given his skill and experience. (Dkt. No.

11  72-2 at 26–28, 37). The Court has reviewed BLF's rates and finds them to be reasonable. (Dkt.

12  No. 72 at 20–26.)

13     BLF billed a total of ▮▮▮ hours in this case from when it began in May 2012 until July

14  2015 when it was dismissed. (Dkt. No. 76 at 2, 41.) Lauer argues that this was excessive. But

15  Lauer does not point to any allegedly excessive time entries in particular. Lauer does reference

16  *Conti v. Corporate Services Group, Inc.*, in which the defendants disputed BLF's fees following

17  a jury trial. 30 F. Supp. 1051, 1059 (W.D.W. 2014).[2] In *Conti*, Judge Jones held that BLF's

18  hours were excessive because BLF litigated that case inefficiently, included non-compensable

19  hours in its billing record, and had limited success. 30 F. Supp. 1051, 1080–84 (W.D.W. 2014).

20  But that was a different matter entirely and Lauer fails to establish any relevant similarities. As

21  BLF explains, Lauer's was a laborious and contentious dispute, and BLF appears to have

22  minimized its hours where possible. (Dkt. No. 72 at 2–13.)

23     Lauer's expert, Claire Condon, does cite to several examples of BLF's alleged

24  ─────────────────────────────────────────

25  RPC 1.5(a).

26  [2] Blankenship attests that this is the first client who has ever disputed BLF's fee. (Dkt. No. 72 at
   15.)

1   inefficiency. (Dkt. No. 99-3 at 4–5.) But because BLF represented Lauer on a contingent basis, it

2   had every incentive to keep its hours low. *See Moreno v. City of Sacramento*, 534 F.3d 1106,

3   1112 (9th Cir. 2008) ("It must also be kept in mind that lawyers are not likely to spend

4   unnecessary time on contingency fee cases in the hope of inflating their fees."); *see also* RPC

5   1.5(a)(8). Condon also argues that BLF is attempting to be compensated for non-legal clerical

6   work, but she points to no specific examples. (Dkt. No. 99-3 at 1.) Instead, she asks the Court to

7   assume that because BLF may have billed for non-legal clerical work in *Conti*, they did so here

8   as well. The Court refuses to make such an assumption. In addition, Condon is incorrect in her

9   argument that BLF billed for nearly all of the hours it spent on the case; in fact, it reduced

10  Lauer's bill by approximately ▉▉▉▉. (Dkt. No. 75 at 4, 6.)

11          The RPC 1.5(a) factors support BLF's requested fee. BLF achieved an excellent result

12  for Lauer despite the difficulties that this case presented. RPC 1.5(a)(4). Lauer's wage loss was

13  low, and she had multiple potentially grave credibility issues. (Dkt. No. 75 at 2–3.) After BLF's

14  fee is subtracted, Lauer's settlement will leave her with over ▉▉▉▉ (inclusive of costs)—▉▉

15  ▉▉▉▉▉▉▉▉.[3]

16          The clear terms of BLF's Fee Agreement also support the reasonableness of its fee. RPC

17  1.5(a)(9). In its very first provision, BLF's Fee Agreement gives it the right to choose between

18  charging 40% of a settlement or its total fees incurred—"whichever amount is greater." (Dkt.

19  No. 72-1 at 5.) Blankenship testifies that he explicitly discussed this provision with Lauer and

20  encouraged her to review the Fee Agreement. (Dkt. No. 72 at 3–4.) Lauer provides no authority

21  for her argument that BLF should only have been able to charge 40% of the settlement because

22  that is what Lauer assumed BLF would do. Given the clarity of the Fee Agreement, Lauer had no

23  basis for such an assumption. *See Yakima Cty. (W. Valley) Fire Prot. Dist. No. 12 v. City of*

24

25  _____

26  [3] Lauer was aware that under BLF's Fee Agreement, costs would be taken out of the settlement. (Dkt. No. 72-2 at 159–60.)

PAGE - 6

1 | *Yakima*, 122 Wash. 2d 371, 389 (1993) (holding that even "[w]here a party has signed a contract
2 | without reading it, that party cannot successfully argue that mutual assent was lacking as long as
3 | the party was not deprived of the opportunity to read the contract, the contract was 'plain and
4 | unambiguous', the party was capable of understanding the contract, and no fraud, deceit, or
5 | coercion occurred"). Lauer also argues that BLF was remiss in not providing her fee statements
6 | during the course of the litigation. But she never claims to have requested these statements, and
7 | provides no authority for her argument that BLF needed to provide them without a request.

8 | BLF also moves for ███████ in costs. (Dkt. No. 89 at 44.) Lauer does not specifically
9 | contest any of these costs. Condon argues that BLF should not be reimbursed for the costs of its
10 | working lunches and legal messenger services. But these costs are reasonable and therefore
11 | compensable. *Blair v. Washington State Univ.*, 108 Wash. 2d 558, 573, (1987).[4] Condon also
12 | argues that BLF overcharged for mediation, but provides no evidence in support of this
13 | allegation.

14 | The Court therefore approves BLF's requested fees and costs.

15 | **B.      The Fee Agreement Is Enforceable and BLF Has Not Violated the RPC**

16 | In addition to arguing that BLF's fees and costs are unreasonable, Lauer also argues that
17 | the Fee Agreement is unenforceable and that both it and BLF itself have violated the RPC. But
18 | Lauer's arguments are weak and largely unsupported, and each of them fails.

19 | Lauer first argues that because BLF's Fee Agreement entitles it to choose between a
20 | percentage and an hourly rate, it constitutes an unenforceable "fee surprise." Lauer points to an
21 | Alaskan state court case that found a supposedly similar fee agreement unenforceable. *Compton*
22 | *v. Kittleson*, 171 P.3d 172 (Ak. 2007). But the fee agreement in that case not only entitled the

23 |

24 |
25 | [4] Although *Blair* is a fee-shifting case and here Lauer will be paying BLF's fee, the cases are comparable. The statutes under which Lauer filed suit provide for fee shifting, 42 U.S.C. §
26 | 1988(b); RCW 49.60.030(2), and the settlement agreement explicitly included attorney fees and costs. (Dkt. No. 90 at 2.)

PAGE - 7

1   attorney to collect the client's entire settlement amount, it also required the client to pay

2   additional fees because the settlement did not cover all of the fees the attorney had accrued. *Id.* at

3   179. In other words, the client was left with "*less than* nothing." *Id.* Here, BLF's Fee Agreement

4   would, at most, entitle it to the amount of the settlement (although, of course, that is not what

5   occurred). *Compton* is therefore entirely distinguishable. Moreover, the Washington State Bar

6   Association Office of Disciplinary Counsel has already found a nearly identical fee agreement to

7   be permissible. (Dkt. No. 72-1 at 13.)

8       Lauer next argues that because the Fee Agreement allows BLF to charge a client for its

9   hours billed, it violates the prohibition against taking a proprietary interest in a cause of action.

10  RPC 1.8(i). But as BLF points out, this alleged conflict of interest is present in every contingent

11  fee case. Lauer argues that BLF's Fee Agreement would entitle it to "take the entirety of Lauer's

12  recovery," but this argument is irrelevant because nothing of the sort occurred here.[5]

13      Lauer then argues that other provisions of the Fee Agreement violate the RPC. Paragraph

14  7 of the Agreement provides that if a client rejects a settlement offer that BLF believes it should

15  have accepted, BLF may charge the client for its fees and costs regardless of the case's outcome.

16  (Dkt. No. 72-1 at 7.) Paragraph 8 provides that if BLF is discharged or forced to withdraw due to

17  certain failures by the client, BLF may still charge the client for its fees and costs. (*Id.*) But

18  regardless of whether these provisions are permissible, they were not implicated in this case and

19  are severable. (*Id.* at 8.) In her declaration, Lauer states that Blankenship threatened her with

20  Paragraph 7 in attempting to convince her to accept the mediator's offer. (Dkt. No. 98 at 7.) But

21  Lauer never once made this allegation in any of her previous emails to BLF, and never once

22

23  _____

    [5] Lauer argues that had she accepted the $150,000 offer of judgment, her award—minus attorney
24  fees and costs—would have been greater than what she received from the settlement, and that
    BLF's Fee Agreement incentivized it to persuade her to reject this offer. But Lauer's math
25  appears to be incorrect. Even assuming that BLF charged her only 40% of the judgment rather
    than its hours billed—which it did not need to do—Lauer would have earned ▓▓▓▓ after fees
26  and costs, rather than ▓▓▓▓. (Dkt. No. 102-1 at 25.)

PAGE - 8

1   indicated that she didn't want to accept the settlement offer. Her only concern was the amount of

2   attorney fees she would have to pay. (Dkt. No. 72-2 at 214–15) ("This does not mean I am not

3   interested in the settlement. The question is will you negotiate fees before I sign?"). And as noted

4   above, after Blankenship initially informed Lauer that Longevity had accepted the mediator's

5   offer, she seemed pleased and grateful for BLF's efforts. (Dkt. No. 72-2 at 193.) Nor in

6   Blankenship's emails did he ever threaten her with Paragraph 7 or 8; rather, he repeatedly told

7   her that they could discuss attorney fees after she agreed to the settlement. (*E.g.* Dkt. No. 72-2 at

8   197.) Lauer argues that these statements were "deceitful" in violation of RPC 8.4 because

9   Blankenship subsequently refused to have this discussion. But the emails indicate that although

10  Blankenship attempted to speak with Lauer about the fees, she did not return any of his calls.

11  (Dkt. No. 72-2 at 227, 229.)

12      Finally, Lauer argues that BLF's actions violated RPC 1.3, 1.5, and 8.4. (Dkt. No. 97 at

13  18). Lauer provides no authority for these arguments and the Court finds them exceptionally

14  unpersuasive.  First, Lauer argues that BLF violated RPC 8.4 by failing to inform her of the

15  statute of limitations on her fee dispute and then delaying litigation so that the clock would run

16  down. But BLF has been nothing but diligent in attempting to resolve this dispute and there is no

17  evidence that it has waited for the statute of limitations to expire. (Dkt. No. 72-2 at 196–236.)

18  Second, Lauer argues that BLF violated RPC 1.5 by unilaterally reimbursing its costs out of the

19  settlement. But it did so only after asking Lauer if she contested the costs and informing her that

20  if she did not, it would withdraw them. (Dkt. No. 88 at 3.) BLF placed the costs in trust once

21  Lauer actually contested them, and has reimbursed those costs that were taken in error. (Dkt. No.

22  102-1 at 25–27.) Third, Lauer argues that BLF violated RPC 1.3 by failing to "work up" and

23  diligently prosecute the case. There is no evidence in support of this accusation.[6]

24

25  _____

26  [6] The Court notes that Lauer's counsel has used especially inflammatory rhetoric in its briefing,
    such as suggesting that BLF's attorneys might be subject to disbarment. (Dkt. No. 97 at 17 n.20.)
    Lauer's counsel's accusations of mendacity and abuse are uniformly extreme and patently

1    The Court therefore finds that BLF's Fee Agreement is enforceable and that neither it nor

2 BLF's actions violated the RPC.

3 **III.    CONCLUSION**

4    For the foregoing reasons, BLF's motion to enforce its fee agreement (Dkt. No. 71) is

5 GRANTED. BLF is entitled to its fee of ▮▮▮▮▮▮ and costs of ▮▮▮▮▮, for a total of

6 ▮▮▮▮▮.

7    BLF's motion to seal (Dkt. No. 73) is also GRANTED. Because all currently sealed

8 documents in this matter contain confidential information, they shall remain under seal.

9    DATED this 31st day of March 2016.

10

11

12

13

14

15

John C. Coughenour
16
UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26 unfounded, which reflects poorly on the accusers—attorneys who, quite frankly, should know
better.

PAGE - 10